UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS ANDERSON | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CATHOLIC CHURCH EXTENSION | ) |
| SOCIETY, a not-for profit, | ) |
| domestic corporation | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT**

1. This is an action seeking redress for the violations of rights guaranteed to the plaintiff THOMAS ANDERSON by the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 et. seq., by defendant CATHOLIC CHURCH EXTENSION SOCIETY, a not-for profit, domestic corporation, and an action seeking redress for the violation of the Illinois Wage Compensation Act, a cause of action specifically recognized by the State of Illinois.

Jurisdiction and Venue

2. Jurisdiction over the statutory violations alleged is conferred as follows: 29 U.S.C. §2601 et. seq., Family Medical Leave Act of 1993. Supplemental jurisdiction for the pendent state claims is proper pursuant to 28 U.S.C. § 1367. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. Section 1391, because defendant's business address is located in Chicago, Illinois.

Parties

3. At all time material, plaintiff, THOMAS ANDERSON was a U.S. Citizen residing at 1038 Jean Baptise Drive Porter, Indiana 46304.

1

4. The defendant, CATHOLIC CHURCH EXTENSION SOCIETY is a domestic not-for profit corporation with a place of business at 150 South Wacker Drive, 20TH Floor, Chicago, Illinois 60606, and is duly authorized to operate and conduct business under the laws of the State of Illinois.

5. Upon information and belief defendant CATHOLIC CHURCH EXTENSION SOCIETY, employed more than 50 employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

**Brief Summary of Plaintiff's Employment at Catholic Church Extension Society**

6. On or about March 1, 1988, plaintiff Thomas Anderson was hired by Catholic Church Extension Society, whose address being 35 East Wacker Drive, 4th Floor, Chicago, Illinois 60601.

7. During the period March 1, 1988 and December 7, 2008, plaintiff remained a full-time employee of CATHOLIC CHURCH EXTENSION SOCIETY at all times in positions of successive responsibility and whose title from November 2003 through December 2008 was Director of the Calendar Division.

8. Throughout plaintiff's 20- year employment at CATHOLIC CHURCH EXTENSION SOCIETY, plaintiff was advised that CATHOLIC CHURCH EXTENSION SOCIETY maintained an employee pension benefit and retirement program whereby employees had the option of retiring at age 65 which was referred to as the "Normal Retirement Date" or at age 55, which was referred to as "Early Retirement Date".

9. In or about September 2004, defendant CATHOLIC CHURCH EXTENSION SOCIETY promulgated and distributed a Employee Handbook which specifically stated, "it is the policy of Catholic Extension that employees who need time away from work for certain

medical reasons may request an unpaid job protected Leave of Absence (LOA), in accordance with the Family Medical Leave Act (FMLA). The purpose of this written policy is to notify the employees of this policy."

10. The CATHOLIC CHURCH EXTENSION SOCIETY "Employment Handbook" further specified that, "An eligible employee is entitled to a total of 12 work-weeks of unpaid leave during a 12-month period for . . . a serious health condition that makes the employee unable to perform the functions of the position of such employee."

11. In or about August 2007, plaintiff informed Jeffery Poynter, the Human Resources Director for Catholic Church Extension Society, that he was suffering from a serious medical condition – severe anxiety disorder and clinical depression– and that these psychological disorders required plaintiff to take prescription medication and receive on-going medical treatment.

12. On or about October 22, 2007, Plaintiff met with Jeffery Poynter, the Director of Human Resources to discuss plaintiff's on-going medical treatment. Plaintiff informed Poynter that his condition was being currently monitored by his physician and treated with prescription medication. Plaintiff further advised, Poynter, however, that the recently announced company re-structuring and planned reduction-in-force (RIF) in staff had resulted in heightened work related stress which was now causing plaintiff greater stress related anxiety. Plaintiff further informed Poynter that while his current condition was not debilitating, his physician had instructed plaintiff to closely monitor his moods and emotions to ensure his current prescription medication remained sufficient to help plaintiff cope with the anticipated heightened work related stress associated with the RIF and re-structuring on the business.

13. On or about May 21, 2008, during a manager's meeting attended by the directors and

managers of CATHOLIC CHURCH EXTENSION SOCIETY, plaintiff learned that management had hired the Huron Group as consultants to evaluate the entire operations of the organization. Plaintiff was then instructed to meet with the Huron Group representatives to assist in the financial evaluation of the company. Plaintiff, however, was not informed that management was in fact, evaluating whether the Calendar Division could be sold off from Catholic Church Extension Society, instead of being "re-structured" with a smaller staff.

14. Throughout the months of June, July and August of 2008, plaintiff was subjected to heightened work related stress and anxiety because plaintiff was directed to attend and participate in several extensive interviews with representatives of the Huron Group and further instructed to personally assist the Huron Group evaluate the financial value and workings of the Calendar Division supervised by plaintiff.

15. On or about August 22, 2008, during a managers meeting, management officials advised all organizational department heads including plaintiff, that the preliminary results of the evaluation performed by the Huron Group were completed and pending approval by the Board of Directors of CATHOLIC CHURCH EXTENSION SOCIETY. Management further advised plaintiff and other managers that the implementation of the recommendations from the Huron Group would result in a "much smaller organization and that several positions would be eliminated."

16. On or about August 22, 2008, during the same managers meeting, management officials informed plaintiff that the reorganization would be implemented in three phases with the first phase staff reductions occurring September 29, 2008, the next group by December 31, 2008 and the last group by the end of the first quarter of 2009 or on or about March 31, 2009.

17. On or about August 22, 2008, during this same managers meeting, management officials

further advised that all staff members terminated would be provided with severance packages commensurate with their position and longevity.

18. On November 17, 2008, plaintiff meet with management to discuss the status of the reorganizational plans for the Calendar Division. Management officials informed plaintiff that the plans for the Calendar Division were not final.

19. On or about November 19, 2008, plaintiff was advised during a meeting with management officials that the Board of Directors of Catholic Church Exchange Society had been considering, since summer, whether to sell the entire Calendar Division to another company.

20. On or about November 19, 2008, management officials further explained that if the sale was consummated all remaining Calendar Division employees would receive severance packages similar to those already distributed during phase one on the re-structuring.

21. On or about November 19, 2008, Jeffery Poynter, the Director of Human Resources told plaintiff that all executives including plaintiff would receive a severance plan which would include at least six months pay, six months medical insurance coverage and outplacement assistance.

22. On November 27, 2008, plaintiff, via email, informed management officials that in addition to the planned six months severance, plaintiff expected to be paid his earned year-end management bonus of $10,000.00, which was customary disbursed during the December and January of the following year.

23. On or about December 1, 2008, when plaintiff returned to work after the Thanksgiving Holiday, he was instructed to meet with representatives of the company that had made the offer to purchase the Calendar Division. As plaintiff met with the representatives of

the purchasing company, plaintiff unexpectedly began to suffer extreme and uncontrollable stress and related anxiety.

24. On or about December 3, 2008, after meeting with the representatives of the company scheduled to purchase the Calendar Division over a period of two consecutive days, plaintiff suffered a severe and debilitating anxiety attack requiring plaintiff to abruptly leave work and seek emergency medical attention. Before exiting the workplace, plaintiff left a phone message for Jeffery Poynter, Director of Human Resources informing him of his serious medical condition and immediate need to obtain medical treatment. Plaintiff was unable to return to work the rest of the week.

25. On or about Monday, December 8, 2008, when plaintiff attempted to return work, plaintiff was unable to enter the locked building of his office at CATHOLIC CHURCH EXTENSION SOCIETY because his employee key card was no longer functioning.

26. On December 9, 2008, plaintiff received a hand-delivered letter from defendant CATHOLIC CHURCH EXTENSION SOCIETY, advising plaintiff that he had been terminated - effective December 8, 2008.

27. At the time of plaintiff's termination by defendant CATHOLIC CHURCH EXTENSION SOCIETY, plaintiff has a balance of four (4) sick days remaining for 2008.

**Count One -Unlawful Denial of FMLA Protections**

28. Plaintiff realleges and incorporate paragraphs 1 through 27, as paragraph 28, of Count One.

29. Beginning in or about March 1988 and continuing uninterrupted until December 8, 2008, plaintiff, THOMAS ANDERSON was employed as a full-time, salaried employee by defendant CATHOLIC CHURCH EXTENSION SOCIETY.

30. From the commencement of Plaintiff's employment by defendant CATHOLIC CHURCH EXTENSION SOCIETY and in consideration of the consistent, competent work performed by plaintiff, defendant CATHOLIC CHURCH EXTENSION SOCIETY consistently paid plaintiff a full-time salary for his services.

31. Upon information and belief, as a full-time salaried employee, and as a condition for continued employment, defendant CATHOLIC CHURCH EXTENSION SOCIETY promised to provide plaintiff additional employee entitlements, benefits and rights in accordance with CATHOLIC CHURCH EXTENSION SOCIETY employee policies as administered and implemented by the Human Resources Department.

32. Upon information and belief, as a full-time salaried employee of defendant CATHOLIC CHURCH EXTENSION SOCIETY during the period November 29, 2008 through and including December 8, 2008, plaintiff was an "eligible employee" and was therefore entitled, as a matter of law, to be granted medical leave in compliance with the Family and Medical Leave Act, 29 U.S.C. § 2601, et. seq.

33. Upon information and belief, another benefit promised and provided to all employees by defendant CATHOLIC CHURCH EXTENSION SOCIETY was 12 weeks of unpaid leave within a 12-month period to be provided in accordance with the Family Medical Leave Act, 29 U.S.C. §2612.

34. On or about December 3, 2008, defendant CATHOLIC CHURCH EXTENSION SOCIETY by and through its agents, managers, supervisors had received notice and was aware that plaintiff was suffering from a chronic serious health condition requiring periodic treatment by a health care provider and that the plaintiff's chronic condition caused episodic periods of incapacity.

7

35. On December 8, 2008, plaintiff had worked in excess of 1250 hours in the preceding 12-month period and was eligible for FMLA protection.

36. On December 8, 2008, when plaintiff attempted to return to work following an episode of his chronic serious medical condition, plaintiff could not enter the building because defendant CATHOLIC CHURCH EXTENSION SOCIETY had at some point prior to December 8, 2008, deactivated plaintiff's electronic office key.

37. Sometime before December 8, 2008, defendant CATHOLIC CHURCH EXTENSION SOCIETY by and through its agents, officers and managers terminated plaintiff as an employee of CATHOLIC CHURCH EXTENSION SOCIETY and denied plaintiff the protections and benefits guaranteed by the Family and Medical Leave Act, 29 U.S.C. §2601 et.seq., despite having sufficient notice of plaintiff's chronic serious health condition and specific knowledge of plaintiff's existing episodic periods of incapacity.

Wherefore, plaintiff, THOMAS ANDERSON, demands judgment against defendant CATHOLIC CHURCH EXTENSION SOCIETY for compensatory damages, immediate re-instatement to his employment, loss seniority and benefits, plus costs of this action, attorney fees and such other relief as the Court deem just and equitable.

### Count Two – ILLINOIS WAGE COMPENSATION ACT

38. Plaintiff incorporates and realleges the allegations set forth in paragraphs 1 through 37 as though fully set forth herein Count II.

39. At all times relevant hereto, there existed a statute known as the Illinois Wage and Compensation Act, 820 ILCS 115/1, *et seq.* ("Wage Act").

40. Plaintiff was an employee of defendant as within the meaning of §2 of the

Wage Act because the plaintiff was an individual permitted to work as a full-time employee of the CATHOLIC CHURCH EXCHANGE SOCIETY and was in a position classified as a Director, Calendar Division.

41. The defendant CATHOLIC CHURCH EXCHANGE SOCIETY is an employer within the meaning of §2 of the Wage Act.

42. Pursuant to the employment customs and practices of CATHOLIC CHURCH EXCHANGE SOCIETY, defendant owes the plaintiff earned wages, salary and the year-end bonus earned for 2008 in the amount of fifty-nine thousand- five hundred eleven dollars and thirty-nine cents ($59,511.39).

43. Plaintiff fully performed all duties required of him by defendant.

44. These payments due are final compensation defined by §2 of the Wage Act.

45. On September 22, 2010, plaintiff submitted a written demand for payment for all final wages due and owed.

46. The defendant violated §5 of the Wage Act by willfully refusing and continuing to refuse to pay the plaintiff the compensation due and owing to him.

47. Pursuant to the statute commonly referred to as the Attorney Fees in Wage Action Act, 705 ILCS 225/1 *et seq*, during the period December 22, 2008 and continuing until January 22, 2009, plaintiff made repeated written demands for payment on the compensation due and owing. Exhibit A.

48. As of the date of this filing, defendant has failed and/or refused to pay plaintiff the compensation due and owing.

WHEREFORE, plaintiff THOMAS ANDERSON, prays that this Honorable Court enter judgment in favor of plaintiff and against defendant in an amount in excess of $59,511.39 plus

interest, costs associated with bringing this action, attorney fees pursuant to 705 ILCS 225/1, *et seq*, and any other relief this court deems just and proper.

/s/ Gregory T. Mitchell
Gregory T. Mitchell
Attorney for Thomas Anderson
Plaintiff

Gregory T. Mitchell
Law Office of Gregory T. Mitchell, P.C.
18141 Dixie Highway, Suite 100
Homewood, Illinois 60430
(708) 799-9325

**Law Office of Gregory T. Mitchell, P.C.**
18141 Dixie Highway, Suite 111
Homewood, Illinois 60430
Ofc. (708) 799-9325    Fax: (708) 799-9326
E-mail: mitchlaw00@sbcglobal.net

September 22, 2010

<u>**Via Certified Mail Return/Receipt Requested**</u>

Thomas E. Gordon, COO
The Catholic Church Extension Society
   of the United States of America
150 South Wacker Drive, 20th Floor
Chicago, Illinois 60606

        Re: **Demand for Wages Owed to former employee Thomas Anderson**

Dear Mr. Gordon,

        I have been retained by Thomas Anderson to investigate and pursue legal action against the Catholic Church Extension Society of the United States of America for unlawful refusal to pay all wages earned in 2008 as required by the Illinois Wage and Compensation Act, 820 ILCS 115/1, *et seq.* ("Wage Act"). According to Mr. Anderson, he was due to receive regular salary through December 31, 2008, a $10,000.00 year-end bonus, six months wages, six months medical insurance coverage and out-placement job search assistance.

        The following calculations were used to determine the amount of final earned wages due and owing to Mr. Anderson:

        4 weeks wages: $11,239.00
        4 weeks medical coverage: $1,742.78
        2008 Year-End Bonus: $10,000.00
        Six-months Severance: (13 pay periods): $36,529.61
        **Total amount owed: $59,511.39**

        By this letter, Mr. Anderson demands that you make immediate payment of all wages due and owed, plus interest of 9%, within 30 days of receipt of this letter. Payment via certified check should be mailed to my office for disbursement to Mr. Anderson.

        Your immediate attention to this matter is requested.

        Sincerely,

        Gregory T. Mitchell
        Attorney for Thomas Anderson

cc:   Thomas Anderson
      1038 Jean Batiste Drive
      Porter, IN 46304

**EXHIBIT A**



**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Sent To: CATHOLIC CHURCH EXTENSION SOCIETY
Street, Apt. No.; or PO Box No. 150 S. WACKER DRIVE
City, State, ZIP+4 Chicago IL 60606

PS Form 3800, August 2006      See Reverse for Instructions

7009 3410 0000 8528 0452

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Thomas E. Gordon, COO
The Catholic Church Extension Society
of the United States of America
150 South Wacker Drive, 20th Floor
Chicago, Illinois 60606

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes ☐ No
   If YES, enter delivery address below:

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)    7009 3410 0000 8528 0452

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

2 of 2